IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No. 112CR35 |
| | ) | |
| JESSE CURTIS MORTON, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM AND POSITION WITH RESPECT TO SENTENCING FACTORS

COMES NOW the defendant, Jesse Curtis Morton, by counsel, and submits this memorandum to further assist the Court in determining a fair and just sentence in this matter.

On February 9, 2012 Mr. Morton entered guilty pleas to an information charging him with (i) conspiracy in violation of 18 U.S.C. § 371, (ii) communicating threats in violation of 18 U.S.C. § 875(c), and (iii) aiding and abetting stalking in violation of 18 U.S.C. §§ 2261A(2)(B) and 2. Mr. Morton was arrest in Morocco on May 25, 2011. He was extradited to the United States on October 31, 2010 and has remained in the government's custody since then. Following his plea, Mr. Morton met with the Probation Department and provided them with all the information needed to prepare a complete presentence report. As his conduct throughout this prosecution makes clear, Mr. Morton fully accepts responsibility for his actions. He is prepared to serve the terms of any sentence imposed by this Court.

**Factual Corrections and Objections to the Presentence Report.**

*Correction #1*: Paragraph 129 contains the only factual objection Mr. Morton has to the information contained in the presentence report. Mr. Morton denies that he told the probation office he had never used crack cocaine but admitted using powder cocaine. His statement was actually the reverse of this. He admitted using crack but denied using powder.

1

*Objection #1*:  Mr. Morton objects to the presentence report's use of U.S.S.G. 2A1.5, conspiracy or solicitation to commit murder, as the lead guideline.  Mr. Morton was charged in count 1 with conspiracy to solicit a federal crime involving the use or threatened use of force, to wit, stalking.  18 U.S.C. 2261A(1) prohibits traveling interstate with the intent to kill, injure, or harass another.  Solicitation requires proof that a person induced or encouraged another person to commit a specific crime.  In the present case, there is no evidence that any person ever attempted to murder MN.  There is no person who has been or can be identified as the potential murderer. The conspirators in this case took no affirmative steps indicative of an intention to actually arrange the murder of MN.  Mr. Morton's action against MN involved posting a link to *Inspire* magazine which remained active for approximately one day.

The object of the conspiracy was to threaten MN, to induce fear, and thereby stop what was believed to defamation of the Prophet Muhammad.   The evidence establishes that the conspirators' intent was to harass MN, not kill her.  The possibility that some unidentified "loan wolf" might read the posts as a solicitation and act on them is mere speculation, not proof beyond a reasonable doubt. *United States v. William White*, 779 F.Supp2d 775, 779 (N.D.Ill. 2011) )(holding that the government failed to present evidence that anyone in White's "target audience" read the posts as a solicitation) *citing United States v. Perez–Melendez*, 599 F.3d 31, 45 (1st Cir. 2010).  Under the circumstances, the guideline which most accurately describes the object of the conspiracy is U.S.S.G. § 2A6.1 which applies to illegally communicating threats and results in an offense level of 18, not 33.

The logic of this argument is bolstered by the sentencing guidelines themselves. U.S.S.G. 2A2.1(a)(1), which applies to attempted first degree murder, has a base offense level of 33, the same as solicitation to murder.  To be guilty of attempted first degree murder, one must

engage in conduct constituting a substantial step towards commission of the crime.  By assigning the same offense level to solicitation, the authors of the guidelines must have contemplated that a similar substantial step to arrange an actual murder would exist before U.S.S.G. § 2A1.5 would be applicable.

*Objection #2*  Mr. Morton requests that his total offense level be reduced by two based on his minor participation in these offenses.  See U.S.S.G. § 3B1.2.  Application Note 5 describes a "minor participant" as a defendant "who is less culpable than most other participants, but whose role could not be described as minimal."  In the present case, Mr. Morton had no involvement in the original publication or distribution of *Inspire* magazine. His culpability arose when he posted a link on Revolution Muslim directing readers to the magazine.  This link was active for one day. Along with the link, Mr. Morton posted a disclaimer stating that the magazine was posted for "educational and information purposes only."  See Statement of Facts ¶ 52.

The same considerations are applicable to the threats against the South Park writers. Mr. Morton played no role in the drafting or posting of Mr. Chesser's original threats.  His primary culpability stems from the "clarification statement" he and Mr. Chesser wrote.  The clarification statement was significantly less threatening than Chesser's original posts. *See* Attachment 1.  Mr. Morton began the statement by noting, "Our intention with this explanation is only, Allah willing, to create the possibility that a deeper and more productive dialogue may be initiated to create an opportunity for correction of wrongs."  He went on to state, "We hope that the creators of South Park may read this and respond, that before sending hate mail and condemning us that we may partake in dialogue, and that the Western media's degradation of the most blessed of men ceases."  Statement of Facts ¶ 38.  After issuing the clarification statement, Mr. Morton stopped communicating with Mr. Chesser.

3

*Objection #3*:  Mr. Morton objects to one criminal history point being assessed for his petit larceny conviction in Albemarle County, Virginia.  As the presentence report explains, this offense arose from the same conduct that led to Mr. Morton's conviction for Possession of Cocaine on May 23, 2003.  There was no intervening arrest.  Although the presentence report is unclear, it seems logical to assume that the offenses arose from the same charging document: the arrest warrants issued on October 28, 2002.  See U.S.S.G. § 4A1.2(a)(2).

Applying this argument would reduce Mr. Morton's criminal history points from 11 to 10 which still results in a criminal history category of V.  Mr. Morton believes this criminal history category overstates the seriousness of his criminal history as well as the likelihood that he will commit other crimes.  A downward departure pursuant to the policy statement in U.S.S.G. § 4A1.3(b)(1) is appropriate.

Two of Mr. Morton's convictions resulted in sentences of 6 to 23 months of incarceration.  When indeterminate sentencing ranges of this nature are employed, the guidelines dictate that the high end of the range be used to assign criminal history points.  U.S.S.G. § 4A1.2, Application Note 2.  Thus, Mr. Morton received 3 points for each sentence because they were deemed to exceed one year and one month.  It must be noted, however, that Mr. Morton actually served only six months on each conviction.  If the guidelines focused on actual time served (which seems a more accurate and equitable manner to assess the seriousness of a sentence), Mr. Morton would have received 2 points for each conviction.  His criminal history category would then be IV.

Mr. Morton's criminal history is based on convictions relating to a life style he left behind many years ago.  All of his criminal history points arise from convictions occurring ten or more years ago.  All are related to his abuse of drugs.  As detailed in the presentence report, Mr.

4

Morton left home at an early age to escape his abusive, dysfunctional family.  Given this background, it is not surprising that Mr. Morton developed substance abuse problems.  Over the past decade, however, Mr. Morton has firmly established that he has overcome these problems. He has graduated from college and earned a Master's degree from Columbia University; he has married and is raising two children; and he has dedicated himself to his religious faith, a faith which prohibits the use of alcohol and drugs.  He has thus demonstrated that the likelihood he will commit other crimes related to his past criminal history is extremely low.

Based on the foregoing, Mr. Morton requests that his offense level total be calculated as follows:

Group one - Stalking and threatening MS and TP:

| | |
|---|---|
| Base level | 18 |
| Pattern of Activity | 2 |
| Minor Role | -2 |
| Adjusted level | 18 |

Group two – Distributing explosive materials/Stalking and threatening MN:

| | |
|---|---|
| Base level | 18 |
| 18 U.S.C. 842(p) | 4 |
| Minor Role | -2 |
| Adjusted level | 20 |

| | |
|---|---|
| Total units | 2 |
| Combined offense level | 22 |
| Acceptance of Responsibility | -3 |
| Offense level total | 19 |

Criminal History Category    IV

Guideline Range              46-57 months

.        **Position of the defendant regarding sentence.**

In *United States v. Booker*, 125 S. Ct. 738, 756 57 (2005), the Supreme Court ruled that

the mandatory nature of the United States Sentencing Guidelines is unconstitutional.  The Court

struck the mandatory language of the statute and held that, although a court should consult the

guidelines in fashioning a sentence, the court is also permitted to tailor the sentence in light of

the other statutory factors outlined in § 3553(a).  *Id*. at 757.  Those factors include (a) the nature

and circumstances of the offense and the history and characteristics of the defendant, (b) the

kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted

sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the

following: the seriousness of the offense, to promote respect for the law and to provide just

punishment for the offense, to afford adequate deterrence, to protect the public from future

crimes and to provide the defendant with needed educational or vocational training, medical

care, or other correctional treatment.  See 18 U.S.C. § 3553(a).  Section 3553(a)'s primary

directive is to impose a sentence sufficient, but not greater than necessary to comply with the

purposes of sentencing.

a.  *The nature and circumstances of the offense.*

In addressing the nature and circumstances of the offense, it is important to note the

dramatic difference between Mr. Morton and the other participants in this vastly defined

conspiracy.   Mr. Morton understands and acknowledges that his actions in establishing

Revolution Muslim, his failure to monitor and edit the site's other contributors, as well as his

6

own postings and publications on the site crossed the line from protected speech into illegal activities. This is not what he wanted to achieve when he started the web site.

Mr. Morton converted to Islam as a young man who had endured a difficult, dysfunctional family followed by several years of struggling with drug abuse. His conversion to Islam ultimately gave him the focus and discipline he needed to harness his considerable talents and intellect in a positive manner. He achieved outstanding academic success and established a solid employment history as a certified substance abuse counselor and as a teacher. He married and had two children – including a young son disabled by Down Syndrome. He remains a devoted husband and father. Despite his legal difficulties, his family has been and remains his top priority.

Mr. Morton's conversion to Islam was powerful and profound. He has described his first reading of the Koran as an overwhelming epiphany. This is not to say that his growth in the religion has not been without careful examination. Mr. Morton is a voracious reader and a strong critical thinker. Over the past decade, he has gained a deep understanding of the Muslim world's history, political structure, and economics. His studies have led him to conclude that the vast majority of the world's Muslims live in oppressive poverty brought on by corporate and imperialistic powers which support illegitimate governments that cling to power by keeping their people poor and uneducated. He believes that the people of the Muslim world have the right to throw off their oppressors and establish states governed by Islamic law. He also believes that such states will have to establish economic and political systems that allow them to interact legitimately with the industrialized Western World while still adhering to Islamic law.

Mr. Morton started Revolution Muslim with the hope that it would be an open forum that could present and discuss a full range of issues confronting the Muslim world. Of course, the

consequences of 9/11, the wars in Iraq and Afghanistan, and the actions of terrorists such as Osama Bin Laden would all be a part of the discussion. Not surprisingly, Mr. Morton's opinions on these issues are dramatically different than most U.S. citizens. Many certainly find such opinions deeply offensive and would like them silenced. Of course, under bedrock principles of the First Amendment, Mr. Morton is entitled to hold and express his opinions provided he does not cross the line into threatening or other dangerous, prohibited communications. During the vast majority of his work on Revolution Muslim, Mr. Morton recognized this line and did not cross it. The same cannot be said for others associated with the website. In large part, Mr. Morton's crimes stem from his failure to adequately address the conduct of these associates.

As the Statement of Facts carefully details the activities of these associates, an examination of Mr. Morton's interaction with them is appropriate:

*Zachary Chesser:* Mr. Morton met Zachary Chesser after reading some of Mr. Chesser's posts on economic issues confronting Haiti following the devastating earthquake there. Mr. Morton was impressed with the intellectual quality of the posts and was surprised that such a young man had written them. He invited Mr. Chesser to post on Revolution Muslim and gave him the administrative information necessary to access the site. Mr. Morton had little direct contact with Mr. Chesser because Chesser lived in Northern Virginia and Mr. Morton lived in New York. Over a short period of time, Mr. Chesser's views became increasingly militant. Mr. Morton recognized the influence of Anwar al-Awlaki, a charismatic preacher who espoused a form of jihad that permitted unrestricted violence against the West, a position that Mr. Morton rejects.

In April of 2010, without Mr. Morton's knowledge, Mr. Chesser posted the initial threat against the writers of South Park for defaming the Prophet Muhammad. As Mr. Morton

explained in his statement to the probation officer, he wrongly attempted to capitalize on the publicity this post garnered by publishing a "clarification statement."

In July of 2010, Mr. Chesser was arrested while attempting to travel to Somlia with plans to join the terrorist group Al-Shabaab. Mr. Morton was unaware of Chesser's plans. Had he been aware of them, he would have strongly tried to dissuade Mr. Chesser. Mr. Chesser had never traveled abroad and had no real comprehension of the situation in Somalia or the Muslims living there.

*Conspirator YK:* Mr. Morton met YK through his involvement with the Islamic Thinkers Society in New York. YK was a Jewish man from Israel who had converted to Islam and moved to New York. Mr. Morton decided to start Revolution Muslim with YK because YK was the only person who shared Mr. Morton's dedication to the project. Unfortunately, YK lacked Mr. Morton's desire to address the issues in a thoughtful, intellectual manner. His posts were sophomoric and needlessly antagonistic. Mr. Morton and YK argued often over the content of YK's posts. Eventually, YK ceased his involvement with the web site.

*Samir Khan:* Mr. Khan was the purported publisher of *Inspire* Magazine. He was killed in a drone strike carried out by the U.S. government in Yemen along with Anwar al-Awlaki. Mr. Morton had no role in the production of *Inspire* Magazine. Before Samir Khan's move to Yemen, he had contacted Mr. Morton and asked him write an article for another on-line magazine he was publishing called *Jihad Recollections*. In response, Mr. Morton wrote an article entitled "Off With the Head" which called for domestic revolutions in the Middle East and counseled Muslims to begin focusing on the development of effective Islamic states. *See* Attachment 2. Mr .Khan found the ideas expressed in the paper highly offensive and upsetting

because they did not align with his belief that all Western culture had to be rejected and destroyed.

*Bilal Zaheer Ahmad:*  On July 25, 2010 Mr. Morton moved to Morocco with his family to begin a new teaching position.  At that time, he handed over all of the day-to-day operation of Revolution Muslim to other authorized administrators including Bilal Ahmad, a Muslim living in England.  On November 3, 2010, Mr. Ahmad published a threatening post which contained the names and addresses of the members of Parliament who supported the Iraq war.  As noted in paragraph 63 of the Statement of Facts, the Revolution Website became unavailable immediately thereafter.  What is not explained in the Statement of Facts is that the site became unavailable because of the actions of Mr. Morton.  In response to Ahmad's post, Mr. Morton forwarded Revolution Muslim's domain name to a new website, Islam Policy.  On November 16, 2010, Mr. Morton published a post on Islam Policy announcing the transfer of Revolution Muslim to that site and explaining that the new site would "concentrate on the solution that is the establishment of the [Islamic] state."  *See* Attachment 3.

b. *The history and characteristics of the defendant.*

As the presentence report and the attached letters (Attachment 5) make clear, Mr. Morton is an individual who has overcome much and has a great deal to offer.  He is an articulate, educated, and hard-working man who is dedicated to his faith and his family.  Not just as a consequence of his arrest, but as a natural result of his religious growth and the ongoing changes in the Arab world, Mr. Morton's views on the correct response to Muslim oppression have moderated.  He is now focused on the prospect of regime changes in the Middle East and the governing systems that must be developed to raise the vast majority of Muslims out of the desperate situations in which they currently live.  As he wrote in his statement to the probation

department, Mr. Morton now believes he can "one day help build bridges between the West and the Muslim World." Presentence Report, p. 36.  .

This growth is not surprising.  Unlike many of Mr. Morton's associates, Mr. Morton is a careful, critical thinker.  He never blindly adopted the teachings of Osama Bin Laden or Anwar al-Awlaki.  As the plea agreement states, the government agrees that Mr. Morton's activities did not involve a federal terrorism crime.  He did not provide support for terrorist organizations nor did he participate in any way in the planning or execution of any terroristic acts.

Mr. Morton is not a terrorist.  The Statement of Facts contain excerpts from an interview Mr. Morton did with CNN as well as an excerpt from a post he placed on Islam Policy responding to a report CNN had done on Revolution Muslim.  Statement of Facts at ¶¶ 4-5.  These quotes are accurate, but they lack context.  On their face, they would lead one to believe that Mr. Morton supports terroristic acts by Muslims against Americans and other non-believers.  In fact, Mr. Morton's post explicitly clarifies his statement on CNN by stating, "In no way, shape, or form is [my statement] a call for attacks against civilians.  In no way, shape, or form has Revolution Muslim ever called for attacks against civilians.  What we do call for is anti-war activism and opposition to empire in the West with support for those physically, even violently, resisting the empire abroad."  *See* Attachment 4.

> c.  *The need for the sentence imposed, the kinds of sentences available and the established sentencing range.*

Mr. Morton is requesting that the Court impose a sentence within the guideline range calculated above: 46 to 57 months. Such a sentence will reflect the seriousness of Mr. Morton's offenses, it will promote respect for the law, and it will provide a fair and just punishment.  Mr. Morton is not a violent individual.  His conduct consisted of illegal speech designed to frighten,

11

coerce, and harass.  Mr. Morton has acknowledged that his actions cannot be sanctioned and that punishment is appropriate.  The sentence requested here, one of approximately four years of incarceration, is sufficient to punish Mr. Morton for his crimes, to give him sufficient opportunity to rehabilitate, and to deter others from engaging in similar conduct.   It clearly meets the directive of 18 U.S.C. § 3553 that the sentence imposed be sufficient- but not greater than necessary- to comply with the purposes of sentencing.

Whatever sentence the Court deems just to impose, Mr. Morton requests that the Court take into account that the Bureau of Prisons will not give him credit for the five months and one week of incarceration he served in Morocco.  Accordingly, Mr. Morton requests that the Court reduce any sentence of incarceration by five months and one week.  Such a request is consistent with the sentencing guidelines policy statement on related discharged terms of imprisonment.  U.S.S.G. § 5K2.23.

WHEREFORE, based on the foregoing and such additional facts and arguments as may be raised in open court, Mr. Morton requests that this Honorable Court sustain his objections to the sentencing guidelines and impose a prison sentence between 46 and 57 months followed by a period of supervised release with such terms and conditions as the Court deems proper.  Mr. Morton further requests that he be recommended for participation in the Bureau of Prisons' 500 Residential Drug Abuse Program.

Respectfully submitted,

JESSE CURTIS MORTON
By Counsel

_____/s/_____
James W. Hundley, VSB # 30723
BRIGLIA HUNDLEY NUTTALL & KAY, P.C.
1921 Gallows Road, Suite 750
Vienna, Virginia 22182
703-883-0880
703-883-0899 (fax)
jhundley@bhnklaw.com

CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2012, I electronically filed the foregoing pleading (with attachments) with the Clerk of the Court using the CM/ECF system, which will send notice of said filing (NEF) to the following:

Gordon Kromberg
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
202-514-8020

*Counsel for the United States*

_____/s/_____
James W. Hundley, VSB # 30723
BRIGLIA HUNDLEY NUTTALL & KAY, P.C.
1921 Gallows Road, Suite 750
Vienna, Virginia 22182
703-883-0880
703-883-0899 (fax)
jhundley@bhnklaw.com

13